IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIRECTV, LLC, A California limited liability company, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | C.A. NO. H-13-1138 |
| DAVID HERRERA, Individually and as officer, director, shareholder and/or principal of DARIO'S RESTAURANT, INC. d/b/a DARIO'S AMERICAN CUISINE, and DARIO'S RESTAURANT, INC. d/b/a DARIO'S AMERICAN CUISINE, | § § § § § § § § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced cause, seeking declaratory and injunctive relief and damages under the Cable Communications Policy Act of 1984, 47 U.S.C. § 605(e)(3)(C), and the Federal "Wiretap Act," as amended by the Electronic Communications Privacy Act (Title III of the Omnibus Crime Control and Safe Streets Act), 18 U.S.C. §§ 2511 (providing a civil cause of action) and 2512, for improper interception, receipt, transmission, and exhibition of satellite programing signals, in addition to civil conversion, is Plaintiff DIRECTV, LLC's ("DTV's") motion for summary judgment (instrument #18). Defendants David

-1-

Herrera and Dario's Restaurant d/b/a Dario's American Cuisine have failed to file a response.

**Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48

(1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991). The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General*

*Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

It is well established in the Fifth Circuit that "[a] federal court may not grant a 'default' summary judgment where no response has been filed." *Bradley v. Chevron U.S.A., Inc.*, No. Civ. A. 204CV092J, 2004 WL 2847463, *1 (N.D. Tex. Dec. 10, 2004), *citing Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment. *Id.* at *1 and n. 2*, citing id.; see also Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003)(where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). *See also Unum Life Ins. Co. of America v. Long,* 227 F. Supp. 2d 609 (N.D. Tex. 2002)("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); *Bookman v. Shubzda*, 945 F.

Supp. 999, 1002 (N.D. Tex. 1996)("A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence.").

In relevant parts, Federal Rule of Civil Procedure 36(a) provides,

> A party may serve on any other party a written request to admit for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of the law to fact, or opinions about either; and (B) the genuineness of any described documents. . . . A matter is deemed admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. . . .

Under Rule 36(b), "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn."[1]

**Applicable Law**

Title 47 U.S.C. § 605(a) of the Cable Communications Policy Act[2] prohibits unauthorized interception of satellite TV signals for one's "own benefit or for the benefit of another not entitled

---

[1] Plaintiff has filed two Notices of Facts Deemed Admitted (#16 and #17), without responses from Defendants to either the requests for admission or the Notices. Therefore those admissions are deemed admitted and they fully support DTV's claims in this action. See also #18-6, Affirmation of DTV's attorney, Julie Cohen Lonstein at pp. 4-6 and Ex. A (#18-7).

[2] As amended by The Satellite Home Viewer Act of 1988, Pub. L. 100-667, 102 Stat. 3959-60.

thereto." *DIRECTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2006).

Section 605(e)(4) provides,

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by [§ 605(a)] shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both.

Section 605(e)(3)(A) provides a civil action for violation of § 605(a) or § 605(e)(4): "Any person aggrieved by any violation of [§ 605(a) or § 605(e)(4)] may bring a civil action in a United States district court or in any other court of competent jurisdiction." Under § 605(d)(6), "the term 'any person aggrieved' shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming . . . ." Thus DTV has standing to sue as a person aggrieved by piracy of its Satellite Programming by an unauthorized, non-licensed establishment.

As for damages, 47 U.S.C. § 605(e)(3)(B) provides, "The court–

> (I) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;
>
> (ii) may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

Under § 605(e)(3)(C)(I) "Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses":

> (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less that $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum of not less than $10,000, or more that $100,000, as the court considers just.
>
> (ii) In any case in which the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.
>
> (iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

The Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), also proscribes signal piracy, making it unlawful for "any person" to intercept "any wire, oral, or electronic communications," including

satellite television signals.  The Fifth Circuit has ruled that direct evidence of signal piracy is not required: "[c]ircumstantial evidence can support a finding that a communication was intercepted, even absent direct evidence." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2005).

Although the Federal Wiretap Act is primarily a criminal statute, civil damages may be recovered by "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter" from "the person or entity . . . which engaged in that violation" under 18 U.S.C. § 2520(a) and (b), "as may be appropriate."  Section 2520(b) provides,

> In an action under this section, appropriate relief includes-—
>
> > (1) such preliminary and other equitable or declaratory relief as may be appropriate;
> >
> > (2) damages under subsection (c) and punitive damages in appropriate cases; and
> >
> > (3) a reasonable attorney's fee and other litigation costs reasonably incurred.

Damages are computed as set out in § 2520(c)(2) where the wrongful conduct is of a viewing of a scrambled or encrypted satellite video transmission:  "the court may assess as damages whichever is the greater of--

> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

**Allegations of Plaintiff's Original Complaint (#1)**

Plaintiff DTV is a major distributor of satellite programming in the United States and provides interstate direct broadcast satellite programming to subscribers with specialized receiving equipment, who pay a subscription fee for programming and obtain a programming license from DTV in return. DTV holds the proprietary rights to the Satellite Programming that it transmits, and is the owner of and/or lawfully designated distribution agent for that Satellite Programming.

DVT contends that David Herrera ("Herrera") is an officer, director, shareholder, and/or principal of, as well as the registered agent for, Dario's Restaurant, Inc. d/b/a Dario's American Cuisine, located at 14315 Cypress Rosehill Road, Cypress, Texas 77429, a commercial establishment, and had supervisory control over internal operating procedures, employment practices, and activities occurring in the restaurant on October 4, 2012. Herrera lives at 14302 Floret Estates Court, Cypress, Texas 77429.

DTV encrypts its satellite transmissions to prevent unauthorized entities and persons from viewing its Satellite Programming. For a payment of a subscription or licensing fee, DTV authorizes and enables a subscriber to unscramble and receive its

Satellite Programming in both homes and commercial establishments, which are charged different rates. Because the reception equipment can be moved from a residence, which has a cheaper rate, to a commercial establishment without DTV's knowledge, owners of commercial establishments who want to use DTV's Satellite Programming for their own financial benefit can secretly obtain access to that programming without proper authorization by subscribing under a residential account and then moving the equipment to their businesses.

The complaint charges that on or about October 4, 2012, Defendants, without permission or authorization from DTV and without paying for their commercial establishment's right to receive, broadcast, use or display DRV's Satellite Programming, willfully received and displayed DTV's Satellite Programming to the public for commercial benefit or financial gain at Dario's American Cuisine in violation of 18 U.S.C. §§ 2511 and 2512, 47 U.S.C. § 605, and Texas law. The complaint further asserts that Plaintiff has been damaged in being denied subscription fees for commercial use of DTV's Satellite Programming, in reduced sales revenues because of Defendants' unfair competition, and in the impairment of DTV's proprietary rights in the Satellite Programming, good will, and reputation, while Defendants have profited and gained commercial advantage for the unauthorized and willful use of the Satellite Programming.

In addition to injunctive relief for willful violations with the purpose of direct or indirect commercial advantage and private financial gain under 18 U.S.C. § 2520(b)(1) and 47 U.S.C. § 605(e)(3)(B)(1), Plaintiff prays for the following damages: (1) statutory damages in an amount of the greater of $10,000 or $100 per day for each day Defendants violated 18 U.S.C. § 2511, or, alternatively, actual damages equal to any profits attributable to Defendants' violations of 18 U.S.C. § 2511; (2) statutory damages in an amount of$ 10,000 for each violation of 47 U.S.C. § 605(e)(3)(C)(ii), or alternatively, actual damages plus damages equal to any profits attributable to the Defendants' violations of 47 U.S.C. § 605; (3) punitive damages for wrongful conversion of DTV's Satellite Programming. Plaintiff also seeks an award of reasonable attorney's fees and expenses for the prosecution of this suit, and pre- and post-judgment interest.

**Plaintiff's Motion for Summary Judgment (#18)**

An affidavit (#18-1) from Kent Madder, Vice President of Risk Management for DTV,[3] explains that DTV's residential and commercial subscribers use the same receiving equipment to receive DTV's programming signals. As a result, if a commercial establishment seeks to surreptitiously pirate the signals, it can intentionally and fraudulently move satellite hardware issued on a residential

---

[3] See also #18-6, Affirmation of Julie Cohen Lonstein, attorney for DTV.

account to its commercial establishment without DTV's knowledge and then use that residential account to receive programming at substantially lower residential prices in violation of its agreement with DTV. DVT alleges that Defendants did so here, moving the receiving equipment from David Herrera's home to Dario's American Cuisine, where it received DTV's programming signals ast the much lower residential rate in violation of Herrera's residential agreement with DTV.

To prevent such misappropriation, DTV employs investigators and auditors to identify such violators. DTV's broadcast center inserts a graphic, known as a "watermark" or "bug" (Ex. A), authorized solely for use with a DTV broadcast, during the broadcast of certain programming and periodically inserts the watermark on a particular programming event at scheduled times during the broadcast. If an investigator and/or auditor sees the watermark, he knows he is watching a DTV program. Thus when a on-site audit reveals the showing of DTV programming in a commercial establishment that is not authorized for it on a DTV commercial account, it is proof that the establishment is receiving the programing without authorization. Such was the case when on October 4, 2012, DTV auditor Keith Howse visited Dario's American Cuisine at 8:40 p.m. and observed a single television set in the restaurant exhibiting DTV programming for public viewing, which exhibited the watermark. Dario's Cuisine has an estimated fire

code occupancy of 50-100 people. See Exhibit B, Howse Affidavit; and Exhibit C (#119), video disc with video of the auditor's observations, including the watermark, and photographs taken by Howse.

After receiving the auditor's report, DTV searched its records and determined there was no commercial account for Dario's American Cuisine, located at 14315 Cypress Rosehill Road, Cypress, Texas 77429,. There was a residential account, number 016895570, in the name of David Herrera at his home address, 14307 Floret Estates Court, Cypress, Texas 77429-458507, activated on February 20, 2004, purchased at a residential rate. The affiant states he has personal knowledge that the account records for Herrera and Dario's American Cuisine (Ex. D) are authentic and accurate. After reviewing the report, DTV's Risk Management Department disconnected programming service for residential account number 016895570 on October 24, 2012.

**Court's Decision**

The elements of a claim for conversion under Texas law are "'(1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property.'" *Alan Reuber*

*Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W. 3d 877, 888 (Tex. App.-Dallas 2009, no pet.), *citing Ojeda v. Wal-Mart Sores, Inc.*, 956 S.W. 2d 704, 707 (Tex. App.-San Antonio 1997, pet. denied). Because DTV does not directly address this claim in its motion, especially the last two elements, the Court does not grant summary judgment on it.

After reviewing the record and the applicable law, the Court concludes the DTV has shown with uncontroverted documentary evidence that Defendants David Herrera, individually and as officer, director, shareholder, and/or principal of Dario's Restaurant, Inc. d/b/ Dario's American Cuisine, and Dario's Restaurant d/b/a Dario's American Cuisine have willfully and knowingly violated the Federal Communications Act, 47 U.S.C. § 605, and the Federal Wiretap Act,, 18 U.S.C. §§ 2511. Defendants have failed to respond and thus failed to meet their burden to raise a genuine issue of material fact for trial. Moreover they have admitted through their failure to respond to requests for admission that they willfully, knowingly, and without authorization from DTV exhibited Plaintiff's Satellite Programming at Dario's American Cuisine on October 4, 2012 for their direct financial benefit.

Accordingly, the Court

ORDERS that DVT's motion for summary judgment is GRANTED as to the statutory causes of action. The Court further

ORDERS that DVD shall submit within twenty days an appropriate motion and affidavit for reasonable fees and costs with supporting documentary evidence and a proposed final judgment. Defendants shall then have ten days to respond to both.

**SIGNED** at Houston, Texas, this  5th  day of  November , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE